ANCIENT ORDER OF UNITED WORKMEN v. SHOBER, Ins. Com'r.

Laws 1890, p. 139. c. 51, § 53, provides that every mutual benefit association or insurance company, as a condition precedent to its right to do business, shall pay to the state 2 per cent, of the gross amount of assessments received by it in the state during the preceeding year, provided "that nothing in this section shall be construed to apply to secret, benevolent,, or fraternal societies who pay sick or death benefits to the widows, orphans, heirs, or relatives of deceased members." Held, that the Ancient Order of United Workmen, organized to unite its members into a fraternal brotherhood, and improve their moral and social condition, to create funds to aid them during sickness or disability, to pay a stipulated sum to the members' beneficiaries at death, and possessed of secret ritual, was a secret fraternal society, within such section, and not liable to the payment of the tax as a condition to its right to do business within the state.

(Opinion filed April 7, 1903.)

Appeal from circuit court, Yankton county. Hon. E. G. SMITH, Judge.

Application, on relation of the Ancient Order of United Workmen, for peremptory mandamus against H. C. Schober, as State Insurance Commissioner, to compel the issuance of a

16 S. D.—33

certificate to relator authorizing it to do business in the state. From an order granting the writ, defendant appeals. Affirmed.

*A. W. Burtt,* Atty. Gen., for appellant.

*J. T. Smith* and *French & Orvis,* for respondent.

Fuller, J. Plaintiff, a corporation created by and existing under the laws of Texas, instituted this proceeding for a peremptory writ of mandamus requiring the Insurance Commissioner to issue a certificate authorizing the transaction of business in this state for the period of one year from and after January 1, 1902, and this appeal is from a judgment accordingly entered.

Whether respondent must pay a 2 per cent tax each year, before it is lawfully entitled to a certificate of authority to transact business through its grand and subordinate lodges, is the controlling question in the case. The statute to be construed is contained in chapter 51, p. 124, Laws 1890, entitled "An act to regulate and control life or accident insurance companies, fidelity or surety companies, mutual assessment, co operative or natural premium plan benefit or accident indemnity companies or associations, and fraternal, benevolent and secret societies organized or operated for the purpose of paying death benefits upon the assessment plan." The first 31 sections of the act (pages 124-132) have reference to the regulation and control of general life insurance companies, and the remaining provisions relate exclusively to assessment and mutual benefit associations, wherein it is expressly provided that the latter "shall not be subject to the general insurance laws of this state regulating life insurance." After placing certain restrictions upon the organization of assessment companies and

mutual benefit associations, and requiring the performance of specific duties essential to the transaction of business in a lawful manner, it is provided by section 52 (page 139) that "fraternal, benevolent and secret societies or associations organized or operated for the purpose of paying death benefits upon the assessment plan organized or doing business in this state shall comply with the provisions of this act." Section 53 (page 139) is as follows: "Every mutual benefit association, or insurance company organized or doing business in this state, shall at the time of making the annual statements required by this act, pay into the state treasury, as taxes, two per cent. of the gross amount of assessments received in this state during the preceding year, taking duplicate receipts therefor, one of which shall be filed with the Auditor, and upon filing such receipts, and not until then, the Auditor shall issue the annual certificate provided for by this act, the said sum of two per cent. shall be in full for all taxes, state and local. Provided, that nothing in this section shall be construed to apply to secret, benevolent or fraternal societies who pay sick or death benefits to the widows, orphans, heirs or relatives of deceased members."

The declared objects of the Ancient Order of United Workmen are: "(1) To unite white male persons, regardless of nationality, political preferences or denominational distinction, into a fraternal brotherhood, the members of which recognize and believe in the existence of a Supreme Being, the Creator and Preserver of the Universe, (2) The adoption of such secret work and means of recognition as will enable the members to make themselves known to each other wherever the order exists. (3) To embrace and give equal consideration to all

classes and kinds of labor, mental and physical; to endeavor to improve the moral, intellectual and social condition of the members, and by wholesome precepts and fraternal admonitions to inspire a due appreciation of the realities and responsibilities of life. (4) To hold lectures, read essays discuss all new inventions and improvements, encourage research in art, science and literature, and when practicable, to establish and maintain libraries for the improvement of the members. (5) To create funds in aid of the members during sickness or other disability, and generally to care for the living and bury the dead. (6) To pledge the members to the payment of a stipulated sum to such beneficiary as a deceased member may have designated, while living, under such restrictions and upon such conditions as the laws of the order may prescribe." It cannot be disputed that the relator and respondent is a fraternal organization, possessing all the characteristic features of a secret society, whose ceremony is known only to its members. While the benevolent impulse doubtless prompts the contribution of a specified sum for the aid of the beneficiary named in the certificate of membership, the obligation to do so rests upon contract, and the Ancient Order of United Workmen consti tutes a mutual benefit association. Ritualistic societies, having no life insurance feature, and whose principal characteristics are secrecy, benevolence, and good-fellowship, are not referred to anywhere in the act, nor contemplated by the Legislature, when it expressly relieved from the 2 per cent. tax all secret or fraternal societies paying death benefits, as therein specified. Although there is nothing in the entire system o which section 53 (page 139) forms a part to justify the conclusion that the stated exemption was intended to apply to or-

ders or lodges having no insurance feature, the best manner of ascertaining the real intention of the Legislature is found in the statute itself. As a general proposition, all assessment companies and mutual benefit associations are called upon to pay into the State Treasury 2 per cent. of the gross amount of their assessments, but this requirement is restricted by the more precise language employed to exempt "secret, benevolent or fraternal societies who pay sick or death benefits to the widows, orphans, heirs or relatives of deceased members." For the purpose of constituting an exception to a general provision, inconsistent expressions are often introduced in the same section, which the courts are not at liberty to annul by construction, unless the repugnancy is such that both cannot be given effect.

That respondent is clearly within the statutory exemption is too plain for argument, and the judgment of the trial court is affirmed.